## SARAH A. HUDSON v. WRIGHT et al., Appellants.

### Division One, May 29, 1907.

1. **QUIETING TITLE: Reinvesting Title: Remedy at Law.** Section 647, Revised Statutes 1899, was repealed by necessary implication by section 650, Revised Statutes 1899. Chancery jurisprudence and statutory jurisprudence may, under section 650, flow on concurrently without impinging on each other; and there is no reason why a suit to quiet title and to vest the title in plaintiff may not be maintained, nor why plaintiff should be compelled to resort, in such case, to his legal remedy, either under section 647 or otherwise.

2. ————: **Misjoinder of Parties: Suit by Wife Against Husband, and Purchaser.** There is no misjoinder of defendants in a suit by the wife against her husband and the purchaser of his in-

terest in land at an execution sale, the purpose of the suit being to vest the title out of the husband and vest it in the wife, the purchaser being joined in order that his apparent record title, an obstacle to the relief sought against the husband, might be cleared away.

3. ———: ———: **Waiver.** By answering over, defendant waives the defect, if any, in the joinder by the wife of her husband as a co-defendant.

4. **EQUITY: Instructions.** The refusal of declarations of law in an equity suit cannot be error, for instructions fill no office in equity practice.    The real issue is, did the decree do equity?

5. **JUDGMENT: Revival: Default.** The fact that a citation was issued and the judgment revived, did not lend validity to the invalid judgment, if defendant did not appear. If the original judgment was not valid, neither was the revived judgment.

6. **EXEMPTIONS: No Notice: Void Sale.** Failure on the part of the officer holding the execution to apprise the defendant head of a family of his right to select real estate in lieu of chattels given him by section 3159, Revised Statutes 1899, will not of itself render an execution sale of real estate void.

7. **LACHES: Deed to Wife and Husband.** It is not the policy of the law to apply the doctrine of laches with nice particularity to dealings between husband and wife.   And where land bought with the wife's money is deeded to both her and her husband, and she asserts her ownership of it soon after a creditor of her husband seeks to disturb her interest by having an undivided half of it sold to pay his debt, she is not chargeable with laches.

8. ———: ———: **Purchaser of His Interest.** And where such creditor of the husband did not change his condition upon any information from her as to the character of her possession of or claim to the land sold under his judgment, and did not become the husband's creditor or obtain judgment against him in reliance upon any record title allowed by the wife to remain in him; and where the creditor is shown to have pursued his insolvent old debtor, in a long quest for a small debt, going to the extent of spending one dollar for every dollar of the debt, there is no natural justice back of the claim, and no laches is chargeable to the wife for failing to sooner bring her suit to have the sale and deed obtained by the husband's creditor at the sale, set aside, and the title vested out of her husband and vested in her.

9. **EQUITY: Accident: Loss of Note.** Accident fell under the head of equity jurisprudence, and loss or destruction of a bill or note falls under the head of accident.   And the statutory re-

quirements as to what is now to be done when a suit is brought on a lost note, amount to what was formerly required to be done in chancery—that is, purging the conscience of the plaintiff, under pains and penalties of perjury, in regard to its loss and destruction before he may proceed to judgment.

10. **LOST NOTE: No Affidavit: Judgment Void.** A justice of the peace has no jurisdiction to render judgment by default on a lost note unless there is the statutory affidavit. Without that affidavit the judgment is void, and may be attacked collaterally.

11. **WIFE'S SEPARATE MONEY: Deed to Husband: Sale Under Execution.** A deed to a husband of land bought in 1890 with the separate means of the wife conveyed only the bare legal title to him unless it was so made with her written consent, and, barring estoppel and fraud, the entire beneficial interest was in her and a resulting trust in her favor, enforceable in equity, at once sprang into existence; and fraud and estoppel being absent, an execution sale under a judgment against the husband, conveyed no title whatever as against her.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*E. C. Hall* for appellants.

(1) The petition shows no equity in plaintiff's claim as against defendant Wright, because no *scienter* is alleged and plaintiff had her remedy at law. R. S. 1899, sec. 647; Cadwaleder v. Atchison, 1 Mo. 659; Cabanne v. Lisa's Exr., 1 Mo. 683; Alnut v. Leper, 48 Mo. 319; Thias v. Seiner, 103 Mo. 314; Lenox v. Harrison, 88 Mo. 491; Jones v. Paul, 9 Mo. 293; Merry v. Fremon, 44 Mo. 518. (2) There was a misjoinder of parties defendant as well as a misjoinder of causes of action. Defendants' interests were not united. Clarmorgan v. Guisse, 1 Mo. 141; Stalcup v. Garner, 26 Mo. 72. (3) The statement filed by defendant Wright in his action against Jacob I. Hudson in the justice court was sufficient to give that court jurisdiction. Mitchell Furniture Co. v. Payton, 4 Mo. App. 564; Polham v. Railroad, 45 Mo. App. 153; Lord v. Koonig, 7 Mo. App. 453; Damhorst v. Railroad, 32 Mo. App. 350;

Lin v. Railroad, 10 Mo. App. 125; McCrary v. Good, 74 Mo. App. 425. (4) It was not necessary, to confer jurisdiction on the justice court, that the statement be sworn to or an affidavit filed in support thereof. Sublett v. Noland, 5 Mo. 516; Kleiblodt v. Grober, 6 Mo. App. 574. (5) A statement filed before a justice which is sufficiently specific to bar another action upon the same matter is all that is required. Damhorst v. Railroad, 32 Mo. App. 350; Johnson v. Kahn, 97 Mo. App. 628; Manley v. Cresent Co., 103 Mo. App. 135; Cunningham v. Dickerson, 104 Mo. App. 410; Van Cleave v. St. Louis, 159 Mo. 574. (6) It is not essential to confer jurisdiction on the justice that the written contract sued on be filed before summons issued. Livery Co. v. Freber, 102 Mo. App. 315; Heinrich v. Coal Co., 102 Mo. 229. (7) Judgments of justices of the peace are no more subject to collateral attack than judgments of courts of record. And the law will presume on such attack that the affidavit, if it was necessary, was filed in support of the petition in the justice court. Railroad v. Warder, 73 Mo. App. 117; Meyers v. Miller, 55 Mo. App. 338; Martin v. McLean, 49 Mo. 361; Cox v. Boyce, 152 Mo. 576; Cox v. Hunter, 152 Mo. 584; Wilson v. Coleman, 88 Mo. App. 564; Hope v. Blair, 105 Mo. 93; Atwood v. Atwood, 55 Mo. App. 370; State v. Dugan, 110 Mo. 138; Lingo v. Burford, 112 Mo. 149; Holt Co. v. Cannon, 114 Mo. 514. (8) Irregularity in or want of verification of any pleading will not render the proceedings subject to collateral attack. Gildeson v. Knight, 71 Mo. 403; Sloan v. Mitchell, 84 Mo. 546; Livingston v. Allen, 83 Mo. App. 294.

*W. S. Herndon* for respondent.

(1) The justice who rendered the judgment upon which the execution was based had no jurisdiction, because neither the note nor an affidavit of its loss or destruction was at any time filed with the justice.

R. S. 1899, secs. 3852, 3854, 6138, 6140; Ins. Co. v. Foster, 56 Mo. App. 197; Orin v. Zeigler, 46 Mo. App. 193; De Vore v. Slacker, 49 Mo. App. 548. (2) It necessarily follows that where the note is lost or destroyed, the affidavit required by the statute must be filed in order to give jurisdiction. While the appellate courts of this State have not passed directly on the effect of a failure to file the affidavit, yet they have always recognized the necessity of such affidavit. Harryman v. Robertson, 3 Mo. 449; Bank v. Kesler & Marks, 53 Mo. 382; Lemon, Hose & Co. v. Cross, 60 Mo. 173; Warder & Co. v. Libby, 104 Mo. App. 140; Hogan v. Kaiser, 113 Mo. App. 711. (3) There was no appearance by defendant either at the time the judgment was rendered or at the time of its revival, and hence there could be no waiver of the statutory affidavit, as in Sublett v. Noland, 5 Mo. 516; Rhea v. Mfg. Co., 81 Mo. App. 400. (4) The undisputed evidence shows that Jacob I. Hudson had no personal property whatever at the time of the levy and sale of the land by the sheriff to defendant Wright; that said Hudson was the head of a family; he and his wife living on the land, in the county; that his interest if any in the land was less than three hundred dollars value. That he had no notice of the execution, levy or sale; that the sheriff did not apprise him of his exemption rights as required by section 3163, Revised Statutes 1899; and that he claimed the same as exempt. The sale was therefore void or at least he had the right to have the sale set aside as prayed in his answer. Bank v. Guthrey, 127 Mo. 189; St. Louis Brewing Assn. v. Howard, 150 Mo. 450; Stinson v. Call, 163 Mo. 323. (5) This is an equity case, and the finding of facts by the trial court is not final. This court must determine for itself both the facts and the law, under the evidence in the record. Blount v. Spratt, 113 Mo. 48.

LAMM, J.—Sarah A. Hudson lodged her bill in equity against her husband, Jacob I., and one Jubal A. Wright, having for its object, *first,* to set aside a sheriff's deed dated September 14, 1902, conveying to said Wright the interest of said Jacob I. in and to a described part of the northeast quarter of the northeast quarter of section 4, township 56, range 32, in Clinton county; *second,* to vest the fee of said land in her. The decree, *nisi,* went in her favor — Hudson abiding the event of the trial, but Wright appealing here.

In substance, so far as material, the case on the pleadings is this: It is alleged that Wright sued Jacob I. Hudson in 1895 before a justice of the peace on a lost or destroyed promissory note, making and filing no affidavit of its loss or destruction. Summons issuing, service was had, an indemnifying bond was filed, Hudson made default and in due course judgment followed for $66.70, plus costs. Not being paid, thereafter, in February, 1902, a citation issued to revive said judgment, and judgment of revival was entered for the sum of $98.35, plus costs—defendant again making default. Execution again issued, a return of *nulla bona* was had and, on a transcript filed in the office of the clerk of the circuit court, a transcript execution issued and was levied upon the apparent interest of said Hudson in said land. It is further alleged that, on advertisement, a sale and sheriff's deed followed, the latter based on a bid of twenty dollars, which deed, having been duly executed, was placed of record in September, 1902.

This is the deed plaintiff desired to annul to clear up her title; and, to do so, averred the judgment of the justice was void for want of jurisdiction to render it because no affidavit of the loss or destruction of the note was made at the time of bringing the suit, or at

any other time.  Other grounds, claimed to show lack of jurisdiction are alleged, but, absent proof tending to sustain them, they may be put aside.

The bill averred, further, that plaintiff purchased the parcel of land in question in 1900 from Henry N. and Joseph S. West for twelve hundred and fifty dollars, to-wit, three hundred and fifty dollars paid down and the assumption of an existing nine hundred dollar mortgage; that instead of making a deed to her alone, the deed, without her knowledge or consent, was made to defendant Hudson and plaintiff, husband and wife; that she at once went into possession of said land; and, since then, had paid three hundred and nineteen dollars on the mortgage debt; that said payments first and last were from her sole and separate money and means, in which her husband had no right or interest; that she is the owner of said tract of land; that said Jacob I. Hudson never had any right or interest therein; and that said sheriff's deed constitutes a cloud on her tittle.

Defendant Hudson answered, admitting each and every allegation of his wife's bill.  Further, and by way of cross-petition, he alleged that, as against all persons except plaintiff, he claimed the ownership of an interest in the land; that such interest was exempt from execution; that notwithstanding it was so exempt, his co-defendant caused a transcript execution to issue as alleged in the bill and caused his said interest to be levied upon, advertised for sale and conveyed to him; that he, Hudson, was the head of a family; that he owned no personal property, then or now; that said real estate was incumbered for one thousand dollars; that it was worth less than one thousand five hundred dollars; that his interest therein was of less value than three hundred dollars; that the sheriff holding and executing the writ of execution did not notify him of that fact and did not apprise him of his exemptions

as the head of a family under sections 3158, 3159, 3162, Revised Statutes 1899, as required by section 3163, nor of his right to hold his said interest exempt, and took no steps to set off his exemptions — he, Hudson, having no notice or knowledge of the execution, levy or sale; that having no notice, he had no opportunity to claim his exemption, or to notify the sheriff that he claimed the same; that the judgment of the justice was void, as alleged in the bill; and, furthermore, he denied all the allegations of the separate answer of his codefendant Wright.

Wright's answer denied all and singular the allegations in the bill not specifically admitted — averred that he is the owner of a half interest in the land "as tenant in common or joint tenant with the plaintiff;" that he derived his title by virtue of the sheriff's deed pleaded in the bill; that his codefendant was the owner of the "one undivided half as joint tenant with plaintiff prior to the sale and sheriff's deed" which interest passed to him by the sheriff's sale; that the Hudsons are husband and wife, and that they (having a common end in view) instituted this proceeding to defraud him (Wright) out of his interest in said land—to that end Hudson, making no defense, is aiding and abetting plaintiff; that the consideration paid for the West deed was derived from the proceeds of a sale by the Hudsons of another tract of land held under a former deed conveying it to them as joint tenants, dated in 1893; that during all times, from the first deed until this time, the title to said lands had been suffered by plaintiff to remain in that way, thereby giving her husband credit as owner; that defendant during all such times was a creditor of said Jacob I. Hudson and had attempted to collect his debt in good faith, spending in the pursuit thereof so much as one hundred dollars, without any notice of plaintiff's claim of sole ownership; and that if plaintiff furnished the money to buy

the land in question, she has been guilty of such laches in failing to assert her claim and in permitting the record to show title in her husband as to bar her right, if any, for equitable relief, etc.

Having pleaded as above, he asked that his interest in the land be protected; that the court declare him to be the owner and decree that possession be awarded him, etc.

By reply, plaintiff admitted the land mentioned in the petition was purchased with the proceeds of the sale of another tract of land (describing it), but she avers that said proceeds were also her sole and separate means in which her husband had no interest. Further replying, she put in issue all other allegations of Wright's answer and renewed her prayer for judgment.

The case made below on the facts is this: In 1893 the Hudsons purchased a small tract of land in Clinton county for one thousand three hundred dollars, subject to two mortgages aggregating nine hundred and seventy-six dollars as part of said consideration, they swapping in on the land some stock belonging to Mrs. Hudson and took the title to themselves jointly— Mrs. Hudson verbally consenting to this arrangement, because being childless and old it was feared if she died before her husband the descent would be cast on her heirs to the exclusion of her spouse. We do not find that Jacob I. Hudson paid anything on this land. The couple lived on the land until in the year 1900, when they sold it. After paying the mortgages, there was left a small sum, say, one hundred and sixty dollars, which at plaintiff's demand was placed in the bank to her credit. In December of that year they purchased the little tract in question for one thousand two hundred and fifty dollars, subject to a mortgage of of one thousand dollars which they assumed, and settled on the tract as a home. The record is obscure as

to how much was paid, but we think it sufficiently shows that whatever was paid at the time or subsequently was paid by plaintiff out of her separate means; though at one time, through an arrangement made by plaintiff, two hundred dollars was raised on the note of her brother-in-law and her husband and paid in on the land, together with plaintiff's said bank deposit—she subsequently paying this note with her own funds. However that be (and through the fog of the record it is difficult to put one's finger on the exact facts), it substantially appears that the husband paid nothing on the land. This conveyance was also taken in the names of both husband and wife, she then or subsequently becoming aware of that fact and making no objection, and the title remaining in this condition until the sheriff's sale to be presently mentioned.

It seems that Jacob I. Hudson, possibly in 1879, executed a small note, which, being in circulation, came into the possession of one Smith as owner, and was taken up by a new note. Afterwards defendant Wright became the owner of this note and held it in 1895. In that year he sued on the note before Squire Finch, alleging the note to be destroyed and filing a statement with said justice to that effect, but the statement was not verified by affidavit as provided in the act regulating justice courts, section 3854, Revised Statutes 1899. Service was had on defendant and the proceedings ripened into a judgment for $66.70—defendant defaulting; and plaintiff, before judgment, filing an indemnifying bond as provided by section 745, Revised Statutes 1899, regulating the practice in courts of record in suits on lost promissory notes. Failing to collect this judgment on execution process, finally in 1902 it was revived on citation in the sum of $98.38— defendant Hudson again defaulting. Process being issued on the revived judgment and due return of *nulla bona* had, a transcript was filed in the office of the clerk

of the circuit court of Clinton county, an execution issued thereon, levy was made on the right, title and interest of defendant Hudson in the land in question, sale followed at sheriff's vendue, and on September 14, 1902, a sheriff's deed was executed to the defendant Wright conveying the interest of the judgment debtor to him. It was shown that no notice was given to Hudson of the issue or levy of this execution, and he remained in ignorance of the sale until the deed was placed on record, when Mr. Wright's attorney notified him to "come down and fix the matter up."

Defendant Hudson was a witness and his evidence was objected to; but as such objections are not pursued on appeal, they will not be noticed. Among other things he testified that he owned no personal property at any time after the original judgment in the justice court to the date of the trial; that he was seventy-two years old; that he and his wife had lived in Clinton county for twenty-five years; that the land in question was worth thirty-five dollars or forty dollars per acre; and that there was an eight hundred dollar mortgage against it. On cross-examination he said he claimed the property as exempt; that he didn't "claim it as exempt under the law," but "I claim it as my wife's, you know, and not my own."

Defendant Wright testified he examined the records and discovered the deeds to Hudson and his wife; that he had spent ninety-six dollars in trying to collect the note; that he had talked with his codefendant Hudson, who had not said anything about his wife claiming to own the land, and that he, Wright, "never knew of plaintiff claiming more than one-half interest in this land." This evidence was supplemented by an attempt to break down the credit of his codefendant as a truthful man. To that end testimony was introduced by two witnesses that his reputation for truth and veracity was not good.

Such was the evidence.

Appellant asked certain instructions, which being refused, exceptions were saved. He then asked a finding of facts, and one was made by the chancellor, but as such finding was in favor of respondent and is deemed somewhat advisory on appeal, it need not be set forth.

On this record, should the decree, *nisi*, stand? We think so, because:

I. Appellant insists the petition shows on its face a want of equity, *i. e.*, states no cause of action. The gist of this contention is that plaintiff had a remedy at law, and we are pointed to section 647, Revised Statutes 1899, for a so-called legal remedy. But appellant leans on a broken staff, since section 647 was repealed by necessary implication by the act of March 15, 1897, Laws 1897, p. 74—now sec. 650, R. S. 1899, *et seq.* [Meriwether v. Love, 167 Mo. 514.] The force and effect of that decision was such that, for all purposes of quieting title, the clumsy and inadequate provisions of section 647 were made obsolete, and old things having passed away, all things became new.

Considering section 650, which provides a remedy to determine interests and quiet title, whether legal or equitable, it ought not to be held that it was in the legislative mind not only to repeal the former statute relating to quieting title (sec. 647), but also to oust the ancient jurisdiction of courts of equity to remove clouds from title, to declare resulting trusts and to vest out of one person and into another the title to land. This court has never held that suits under section 650 are to be tried strictly as actions at law (for instance to a jury), nor that said section overturns the recognized jurisdiction of courts of chancery; and it is not perceived why chancery jurisdiction and the statutory jurisdiction under section 650 may not flow on parallel and concurrently without impinging on each other and without a

wound to equity jurisdiction as the fathers handed it down to us. [Baldwin v. Davidson, 139 Mo. l. c. 126-7, and cases cited.]

II. Appellant next insists "there was a misjoinder of parties defendant as well as a misjoinder of causes of action. Defendants' interests were not united." It is true that in one (*i. e.*, a colloquial) sense there was a misjoinder. Certain it is that the two defendants did not work well under the same yoke, but pulled in opposite directions—defendant Hudson, as husband, bending to the wishes of plaintiff, his wife, as a bow does to the cord, and both bow and cord in this instance aiming the self same arrow at Wright; but in a legal sense there was no misjoinder of parties or causes of action. Hudson was made a defendant so that, as between him and plaintiff, his apparent title should be vested out of him and into her; and Wright was made defendant in order that his apparent record title to the same land might be cleared away as an obstacle to the relief sought against Hudson.

Not only so, but such defect, if any, was waived by answering over. Section 598, Revised Statutes 1899, provides, among other things, that: "The defendant may demur to the petition, when it shall appear upon the face thereof, either: . . . *fourth,* that there is a defect of parties plaintiff or defendant; or, *fifth,* that several causes of action have been improperly united. . . . " Section 602 provides that: "When any of the matters enumerated in section 598 do not appear on the face of the petition, the objection may be taken by answer. If no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court over the subject-matter of the action, and excepting the objection that the petition does not state facts sufficient to constitute a cause of action."

Expounding this statute, it has always been held that, absent a demurrer when such defect, if any, exist, be on the face of the petition, as here, it comes too late after answer to raise such question. [See authorities collated in Mo. Ann. Stat. 1906, at page 629, *et seq.*] The point is ruled against appellant.

III. Error is assigned in the refusing of appellant's declarations of law. But instructions fill no office in equity practice—*ergo,* are out of place in this case. The question here is not what views the chancellor may have had on the law—the heart of the matter is: Did the decree do equity? And that is the impelling question we must seek out an answer to on appeal, and none other. [Bouton v. Pippin, 192 Mo. 1. c. 474, *et scq.*] There is no merit in this assignment of error.

IV. Appellant comments, *arguendo,* on the fact that a citation was issued and the justice judgment was revived. If Hudson had appeared to this citation the question might take on a new form. But failing to appear thereto, he continued his old default; and since a citation to revive a justice judgment is not a new suit, but is merely ancillary to the old proceeding (Ellis v. Jones, 51 Mo. 1. c. 187; Sutton v. Cole, 155 Mo. 1. c. 211), it is obvious that the revived judgment is not the starting point but that the original judgment is, and hence must be valid to support appellant's transcript execution and sheriff's deed. The point is ruled against appellant.

V. Appellant's theory is that Hudson had an interest in the real estate in question subject to execution levy and sale. Respondent does not concede that theory, but, for purposes of argument, meets appellant half way and says that if appellant's theory be true, then Hudson was entitled to an exemption in said real estate to the amount of three hundred dollars; and that as he had no chance to claim such exemption and his

interest in the land on the showing made was of a less value than three hundred dollars, therefore the levy, sale and deed were one and all void. This contention arises from respondent's application of the exemption statutes to the record facts and may be stated thus: The record shows Hudson was the head of a family and had no personal property whatever. Having none, there were necessarily absent the ten head of hogs, the ten head of choice sheep (with their product in wool, yarn or cloth), the two cows and calves, the two plows, the one axe, hoe and set of plow gears and necessary farm implements for the use of one man, and the two work animals and feed of the value of twenty-five dollars, exempted by the first two subdivisions of section 3159, Revised Statutes 1899. Absent these specific kinds of exempt chattels, respondent argues that under section 3162, Hudson, as the head of a family, had the right in lieu thereof to select an interest or amount of land of the value of three hundred dollars as exempt—that section so providing.

It will be seen that the debt in suit was older than the acquisition of a homestead. Therefore, the absolute exemption of a homestead, as such, is not involved in this case. The question is, whether a failure on the part of the officer holding the execution to apprise Hudson of the chattels exempt under sections 3159 and 3162, *supra,* and apprise him of his right to hold the same or an equivalent value in land as exempt from execution sale, of itself renders the sale and deed void?

Whatever may be the individual views of the writer on the wisdom of exacting the nicest compliance with exemption statutes, in order to further the beneficent purposes underlying them, yet it cannot be held that the punishment meted out on non compliance with section 3162, *supra,* goes so far as to make void an execution levy and sale of real estate. [Finley v. Barker, 110 Mo. l. c. 408.]

In that case it was held that (absent an absolute homestead right) the failure of the officer to apprise the execution defendant of his exemption rights might give some other right of action, if injury was sustained; but that such injury "cannot be taken as a substitute for the selection of the property sold, which the defendant might or might not have made." To the same effect is Chance v. Norris, 143 Mo. l. c. 238. In Paddock v. Lance, 94 Mo. 283, the question was under consideration, but in that case the issue was not within the pleadings and was not passed on. So here, respondent did not tender any such issue in her bill; neither did appellant tender any such issue in his answer. Such issue is lugged into the case by Hudson in his answer as a makeweight in favor of plaintiff.

It has been held that a timely motion to quash an execution lies if the execution defendant be the head of a family and has not been apprised of his exemption rights to select real estate in lieu of chattels. [Stinson v. Call, 163 Mo. l. c. 330, *et seq.*] In that case Division Two held this court had jurisdiction of an appeal from an order sustaining a motion to quash an execution levy on real estate. Such ruling was made on the authority of McAnaw v. Matthis, 129 Mo. 142, in which Division One held the same way. Both these cases, as authority on that particular point, have been questioned and overruled. [State *ex rel.* v. Elliott, 180 Mo. 658; Lawson v. Hammond, 191 Mo. 522; Snodgrass v. Copple, 203 Mo. 480.]

What was said, therefore, in Stinson v. Call on other points must be considered as said in a case in which we had no jurisdiction and is to be taken as *obiter;* but it is of the character of *obiter* referred to by McCormick, J., in Bucki & Son Lumber Co. v. Fidelity & Deposit Co., 109 Fed. l. c. 401, as being "of a grade so high that the line between it and authoritative decision is too shadowy to be discerned by average judi-

cial acumen." Nevertheless, if Stinson v. Call be taken as authority, yet it in no way militates against Finley v. Barker, *supra,* and Chance v. Norris, *supra.* Therefore, the point in hand is ruled against respondent.

VI. Disposition of the foregoing questions brings us to the crux of the case. Thus, it is asserted by respondent and denied by appellant that the justice judgment at the root of appellant's title is void for want of jurisdiction of the subject-matter; and this because the affidavit contemplated by section 3854 is absent. That section provides that if the instrument upon which the suit is founded (in this case a note) is lost or destroyed, then the plaintiff should file with the justice the affidavit of himself or some other credible person stating such loss or destruction and setting forth the substance of such instrument. On the other hand, it is argued by appellant that at the utmost the absence of the statutory affidavit is a mere irregularity and does not open that judgment to collateral attack. The chancellor found there was no affidavit. Following that finding, he held the judgment was void because the statutory affidavit was necessary to confer jurisdiction of the subject-matter on the justice of the peace. It is argued the finding was erroneous, and the decree must necessarily fall — not only because of such error, but because respondent was guilty of laches.

(a) As dispositive of the question of laches, suffice it to say that Mrs. Hudson, as between her and Wright, asserted her ownership of the land presently after Wright sought to disturb her interest. There was no laches there — no sleeping on her rights. And if the matter of laches be viewed as between husband and wife, then appellant, an outsider, has no concern as a stranger with that view of the matter — one should not put his finger between the tree and the bark. It has never been the policy of the law to apply the doctrine of laches with nice particularity to dealings between

Hudson v. Wright.

man and wife. [Stevenson v. Smith, 189 Mo. l. c. 467.]

Moreover, Wright did not change his condition upon any information from Mrs. Hudson as to the character of her possession of, or claims in, the real estate in question; he did not become Hudson's creditor, or obtain his judgment in reliance on any record title allowed to remain by the wife in the husband. This being so, appellant's case does not come within the doctrine of Leete v. Bank, 115 Mo. l. c. 204, and Bank v. Winn, 132 Mo. 80, where questions of fraud and estoppel are involved.

Sometimes a great light is thrown upon a situation through a very small crevice; and, in this case, where a creditor has shown such zest in the long pursuit of a small debt from an insolvent old man that he spent a dollar of good money for every dollar of doubtful debt in sight, it comes with ill grace for him to now suggest that such pursuit and expense took on color from the acts and conduct of an old wife, *inops consilli,* whose humble life happily may have passed unvexed with the solving of the subtleties of the law as applied to married women and relating to estates by entireties or otherwise. There being no natural justice back of it, the claim of laches is ruled against appellant. [Bucher v. Hohl, 199 Mo. 320.]

(b)  Was the justice judgment void because of a failure of jurisdiction of the subject-matter?

The loss or destruction of a bill or note falls under the head of accident, and "accident" was always a head of equity jurisprudence — witness the doggerel of Sir Thomas More compressing these heads into two lines, *viz*:

"Three things are helpt in conscience —

Fraud, *accident* and things of confidence."

Suits on lost instruments, therefore, were once cognizable alone in equity. [Barrows v. Million, 43 Mo. App. l. c. 83; Warder v. Libby, 104 Mo. App. l. c.

145; Hansard v. Robinson, 7 Barn. & Cress. 90; Crowe v. Clay, 25 Eng. L. & Eq. 451; Foster's Admr. v. Williams, 44 Ky. (5 B. Mon.) 197.]

By the law merchant and the common law, bills and promissory notes, contrary to the old rule governing ordinary choses in action, circulated from hand to hand by indorsement and delivery when to order, or by delivery alone when to bearer. The profert of the bill thus became an essential prerequisite to payment. Accordingly, it was of the essence of things in case of suit to see to it that such bill or note was put out of circulation when ostensibly merged in judgment. That is, the maker, indorser or acceptor was entitled to a shield against a recovery from any other person; and that shield was that the bill or note be produced in court. Hence, the old learning was that if the bill or note be lost or destroyed, relief could be had only in equity where the conscience of the plaintiff could be purged touching the loss of the instrument; and where, as the price of the decree, a suitable indemnity could be exacted of the plaintiff. It is true there came a growth in the law and that suits on lost instruments were finally entertained in England in courts of law; but in Missouri the right to sue on a lost note in a court of law had its origin in an express statutory provision which by implication recognized exclusive jurisdiction in chancery up to that time. [See 2 Mo. Terr. Laws, p. 257.] This statute, passed in 1831, provides in substance that an action on a lost or unintentionally mislaid promissory note, etc., shall be prosecuted as "a suit at law . . . without producing the same on the trial before any justice of the peace, or making profert of the same in any court of record, if he, she or they [the owner or assignee] will make affidavit in writing, sworn and subscribed, . . ." that the note had been lost or unintentionally mislaid, etc. The act further provided that a bond of indemnity should be taken. The

foregoing act was repealed in 1835 (R. S. 1835, p. 384, sec. 33), and a new statute at once enacted (R. S. 1835, p. 350, sec. 6, *et seq.*), which, with some immaterial changes and reformulations of sections, may now be found in our Revised Statutes. [R. S. 1899, secs. 3852, 3854.] The statutory affidavit relating to the loss or destruction of the note is but the statutory method of doing what was formerly done in chancery — that is, purging the conscience of the plaintiff, under the pains and penalties of perjury, in regard to its loss or destruction before he may proceed to judgment.

The statutory affidavit is thus seen to be borrowed from a wise doctrine of chancery and to serve a present and obviously useful purpose. The subject-matter of litigation here was that of a lost note. Now, in cases of lost notes, the justice either acquires jurisdiction by, or may not proceed to judgment without, the filing of such affidavit. [R. S. 1899, secs. 3852, 3853, 3859.] And to say the plain mandate of the statute may be struck to the ground, and that a justice judgment, rendered on default and in the teeth of the law, is valid, is going further than we are willing to go; for, in view of what has been said, a suit on a lost note before a justice of the peace is somewhat of a special proceeding. Hence, jurisdiction over the subject-matter, if not appearing in the judgment itself, should at least appear somewhere in the proceedings. [Carpenter v. Roth, 192 Mo. l. c. 669, *et seq.* See authorities cited in briefs of counsel.] Absent jurisdiction, the judgment was void, and, therefore, subject to collateral attack. [Hope v. Blair, 105 Mo. l. c. 92.] Being subject to collateral attack, the ruling of the chancellor was without error.

VII. But the decree may be sustained on another ground — the *ratio decidendi* below being immaterial so long as the decree does equity, is within the pleadings and is based on record facts.

The money paid for this land was the separate means of the plaintiff — a married woman. Such means are within the protection of section 4340, Revised Statutes 1899, since the year 1875. This money could not become the property of her husband except by her full authority in writing, which authority was not given. The lack of consent pleaded in plaintiff's bill may therefore fairly be construed to mean the lack of statutory consent. Hence, in so far as the husband acquired any record title and interest in the land, in the year 1900, by employing his wife's separate means in its purchase, it was a bare legal title, the entire beneficial interest was in the wife, he was seized to her use and a resulting trust in her favor at once sprang into existence, enforceable in equity, and which (barring fraud and absent elements of estoppel, as here) was superior to the rights of prior creditors of her husband. [Owings v. Wiggins, 133 Mo. l. c. 633; Scrutchfield v. Sauter, 119 Mo. l. c. 625, et seq.; Seay v. Hesse, 123 Mo. 450 (see concurring opinion of MacFarlane, J., p. 460, et seq.); Hdw. Co. v. Horn, 146 Mo. l. c. 134; Palmer v. Alexander, 162 Mo. 127; McLeod v. Venable, 163 Mo. l. c. 541; Johnston v. Johnston, 173 Mo. l. c. 115.]

An execution levy upon a bare legal title, where the execution debtor had no beneficial interest in the land, and a sale convey no title whatever as against the *cestui que trust*.

Freeman states the rule to be (2 Freeman on Ex. (3 Ed.), sec. 173): "While, as a general rule, all legal estates in land are subject to execution, the rule is not applied to the detriment of persons for whose benefit the legal estate may be held. It is only when the holder of the legal title has some beneficial interest that it can be sold under execution. If he is a mere trustee, or if, for any reason, he holds the bare legal title for the benefit of another, an execution sale against

him transfers no interest whatever. . . . The rule respecting the exemption from execution against the trustee of lands held in trust for another is not restricted to formal declarations of trust. It applies to all cases where, though the legal title is in the judgment debtor, he has no beneficial interest in the land. This may exist in trusts arising from operation of law, as well as in those formally declared in some declaration or conveyance." [Morrison v. Herrington, 120 Mo. 1. c. 673.]

Hudson, being trustee for his wife by operation of law, and holding whatever record title he had as a bare legal title, and being seized to his wife's use, the execution levy upon and sale of his interest conveyed nothing, and the decree was right on this ground also.

There being no reversible error, the judgment is affirmed.

All concur.