LIZZIE C. SKINNER V. GEORGE B. SKINNER.

FILED JANUARY 4, 1894.    No. 5608.

1. **To sustain an action for use and occupation** of real
estate the relation of landlord and tenant must exist between
the parties by agreement, either expressed or implied.

2. **One in exclusive possession of the real estate** of an-
other with the latter's knowledge, in the absence of all evidence
on the subject, will be presumed in possession by the owner's
permission.

3. **Landlord and Tenant.** The law, in the absence of all evi-
dence to the contrary, will imply the existence of the relation
of landlord and tenant between two parties, where one owns
land, and with his knowledge and permission, such land is used
and occupied by another.

4. **If the tenant's use and occupation** has been beneficial to
him, that is sufficient from which to imply a promise on his
part to pay a reasonable compensation for such use and occupa-
tion, in the absence of any evidence negativing such promise.

5. **Witnesses: HUSBAND AND WIFE.** In a suit by a married
woman against her husband for the use and occupation by him
of her real estate the wife is not a competent witness.

6. **Pleading Under Code.** It is not material by what name, or
whether by any, an action under the Code is designated. The
pleader should state the facts, and if they constitute a cause of
action, the law affords the remedy without reference to the form
of the action.

ERROR from the district court of Lancaster county.
Tried below before TIBBETS, J.

The opinion contains a statement of the case.

*Charles O. Whedon,* for plaintiff in error:

The married woman's act of 1871 wholly removed the
common law disability of a married woman and repealed
section 331 of the Code so far as it prevents a married

woman from testifying in a suit brought by her against her husband. (*May v. May*, 9 Neb., 16; *Pope v. Hooper*, 6 Neb., 187; *Omaha Horse Railway Co. v. Doolittle*, 7 Neb., 486.)

*G. M. Lambertson* and *Abbott, Selleck & Lane, contra:*

The petition does not state a cause of action. Such a suit cannot be maintained by a wife against her husband. (*Barber v. Root*, 10 Mass., 260; *Aultman v. Obermeyer*, 6 Neb., 264; *Fowler v. Trebein*, 16 O. St., 498; *White v. Wager*, 25 N. Y., 328; *Winans v. Peebles*, 32 N. Y., 423; *Lord v. Parker*, 3 Allen [Mass.], 127; *Smith v. Gorman*, 41 Me., 405; *McKeen v. Frost*, 46 Me., 239; *Dwelly v. Dwelly*, 46 Me., 377; *Farrell v. Patterson*, 43 Ill., 52; *Reeves v. Webster*, 71 Ill., 307; *Aiken v. Davis*, 17 Cal., 119.)

In order to maintain an action for use and occupation the relation of landlord and tenant must exist. Occupancy under some contract, express or implied, must be shown. (*Thompson v. Bower*, 60 Barb. [N. Y.], 463; *Smith v. Stewart*, 6 Johns. [N. Y.], 46; *Sylvester v. Ralston*, 31 Barb. [N. Y.], 287; *Marquette, H. & O. R. Co. v. Harlow*, 37 Mich., 555; *Dalton v. Laudahn*, 30 Mich., 349; *Hogsett v. Ellis*, 17 Mich., 351; *Long v. Bonner*, 11 Ired. [N. Car.], 27; 2 Wood, Landlord & Tenant, sec. 546; *Moore v. Harvey*, 50 Vt., 297; *Brewer v. Craig*, 18 N. J. Law, 214; *Stewart v. Fitch*, 31 N. J. Law, 17; *Mitchell v. Pendleton*, 21 O. St., 664; *Nance v. Alexander*, 47 Ind., 516; *Espy v. Fenton*, 5 Ore., 423.)

The wife cannot testify in this case against her husband. (Sec. 331, Code; *Lord v. State*, 17 Neb., 526; *Karney v. Paisley*, 13 Ia., 89; *Russ v. Steamboat War Eagle*, 14 Ia., 363; *Blake v. Graves*, 18 Ia., 312; *Stephenson v. Cook*, 64 Ia., 265; *Bartlett v. Bartlett*, 15 Neb., 595; *Shoeffler v. State*, 3 Wis., 717; *Farrell v. Ledwell*, 21 Wis., 184.)

Ragan, C.

Lizzie C. Skinner sued George B. Skinner in the district court of Lancaster county, alleging, as her cause of action, that she was the owner of certain real estate; that George B. Skinner, by her permission and as her tenant, had occupied and used said real estate for about four years, and though often requested, had never paid anything whatever for his use and occupancy thereof; that the reasonable rental value of said property during the time said George B. Skinner had occupied it was $1,200 per year. George B. Skinner's answer, so far as it is material here, admitted his use and occupation of the property; averred that the property was his, Mrs. Skinner holding the legal title as his trustee; that he and Mrs. Skinner were husband and wife; that the relation of lessor and lessee had never existed between him and Mrs. Skinner; that she had never made demand on him for rent; that he had never paid any rent; and he further denied that he used and occupied said premises by her permission or as her tenant, but averred that he occupied them with her knowledge. Mrs. Skinner's reply admitted that she and Mr. Skinner were husband and wife, and denied the other allegations of the answer recited above. Mrs. Skinner proved her title to the property and the rental value, and then offered herself as a witness to prove that Mr. Skinner occupied said real estate as her tenant; that she had paid $800 taxes on said real estate during said time; that Mr. Skinner took possession of and erected some buildings on said property by her permission; and that she had paid $400 insurance on said buildings. Counsel for Mr. Skinner objected to Mrs. Skinner's testifying, on the ground that she being the wife of the defendant could not testify against him. The court sustained the objection. Mrs. Skinner excepted. No evidence was offered by George B. Skinner. The court dismissed Mrs. Skinner's case, and she brings the cause here for review.

The first error alleged is the refusal of the court to permit Mrs. Skinner to testify against her husband.  By section 331, title 10, Code of Civil Procedure, it is provided: "The husband can in no case be a witness against the wife, nor the wife against the husband, except in a criminal proceeding for a crime committed by the one against the other; but they may in all criminal prosecutions be witnesses for each other."  If this statute is still the law, it is decisive of the question presented.    This statute was passed in 1855, and counsel for Mrs. Skinner argues that it is no longer in force.   He bases this conclusion on chapter 53, Compiled Statutes, 1893, entitled "Married Women," sections 2, 3, and 4 of which act provide:

"Sec. 2. A married woman, while the marriage relation subsists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same, in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property.

"Sec. 3. A woman may, while married, sue and be sued, in the same manner as if she were unmarried.

"Sec. 4. Any married woman may carry on trade or business, and perform any labor or services on her sole and separate account; and the earnings of any married woman from her trade, business, labor, or services shall be her sole separate property, and may be used and invested by her in her own name."

Counsel says: "By this act the legislature removed the common law disabilities of a married woman."   But this act has no reference to the right of married women to testify.    It does not define, nor attempt to define, what shall be evidence, nor who shall be competent witnesses in any case.    It does not deal with the subject of either witnesses or evidence.   At common law the contracts of a married woman were void, and the object, and the only object, of this statute (chapter 53) was to remove her disa-

bility to contract, and permit her to contract with reference to her separate property, trade, or business. (*Godfrey v. Megahan*, 38 Neb., 748, and cases there cited; *Niland v. Kalish*, 37 Neb., 47.) In *Lawson v. Gibson*, 18 Neb., 137, the rule as to the repeal of statutes by implication is thus stated: "A statute will not be considered repealed by implication unless the repugnancy between the new provision and the former statute is plain and unavoidable."

Now there is no repugnancy whatever between section 331 of the Code of Civil Procedure, defining the cases and circumstances in which a husband or wife becomes a competent witness against the other, and the so-called "married woman's act," removing the common law disabilities of a married woman to make contracts and sue and be sued. At common law neither husband nor wife could testify one against the other in any case. The rule still remains, except in so far as it has been changed by our statutes. The changes made by the statutes now in force permit a husband or wife to testify one against the other only in proceedings for divorce, and in criminal proceedings for a crime committed by the one against the other. If the statutes, as they exist, are unjust and oppressive, appeal should be made to the legislature to modify them. The court is but a humble interpreter, whose duty it is to give effect to the mandates of the sovereign people as found in the laws enacted by the legislative department of the state. The court did not err in refusing to permit Mrs. Skinner to testify.

The pleadings and evidence in the case establish that Mrs. Skinner owned the real estate described in the petition; that George B. Skinner had used and occupied it for four years, and that its reasonable and fair rental value for that time was $——; that plaintiff and defendant were husband and wife, and that the property used and occupied by the defendant was not the homestead of the parties. It was not proved that George B. Skinner occupied said premises under an express agreement to pay rent; nor that he

went into possession by Mrs. Skinner's express permission; nor that his taking possession of said property was wrongful; nor was it proved that he had ever paid any rent or been requested to pay any. Section 1, chapter 53, Compiled Statutes, 1893, provides: "The property, real and personal, which any woman in this state may own at the time of her marriage, and the rents, issues, profits or proceeds thereof, and any real, personal, or mixed property which shall come to her by descent, devise, or the gift of any person except her husband, or which she shall acquire by purchase or otherwise, shall remain her sole and separate property, notwithstanding her marriage, and shall not be subject to the disposal of her husband." The design of this statute was to protect the wife's separate property from the control and disposition of her husband; to make them, so far as her separate estate is concerned, strangers. To give effect to this policy requires that in such cases as the one at bar the same presumptions should be indulged as in an action between strangers; any other course would permit the husband to gain the usufruct of his wife's property, and undo the policy of the law. A married woman would thus be restored to her common law status. With the question as to whether this is a wise law we have nothing to do. It is the law, and that is sufficient for us. The evidence further showed that Mrs. Skinner acquired this real estate by purchase after her marriage to Mr. Skinner; that the title has remained of record in her name since 1878, and this raises the presumption that it is her separate property.

Counsel for appellee George B. Skinner say: "The statute which says 'a woman may, while married, sue and be sued, in the same manner as if she were unmarried,' does not authorize a married woman to sue her husband at all, because if she were unmarried she could not sue her husband, since she would have none to sue." The answer to this proposition is, "that if this woman was unmarried,

she could at common law sue this man; being a married
woman, she could not at common law sue her husband, or
any one else; but the statute having removed her common
law disability in that respect, she may now sue any person
whom she could sue, either at common law or under the
statute, if she were unmarried. Her legal ability to sue
and be sued is not limited to matters having reference to
her separate property, trade, or business, as is her legal
ability to make contracts."

The rights, then, of the parties to this suit are to be de-
termined as though the parties were strangers, and the
question is, does the law imply a promise on the part of
George B. Skinner to pay his wife what the use and oc-
cupation of her real estate by him was reasonably worth
during his occupancy and use thereof? The form of action
in this case seems to be given much prominence by counsel
for appellee in his brief and in the authorities cited by
him. It is true that the action is designated as one for use
and occupation. It is not material by what name, or
whether by any, an action under the Code is designated.
The pleader should state the facts, and if they constitute a
cause of action the law affords the remedy.

We have examined all the authorities cited by counsel
for the appellee George B. Skinner to the point that an
action for use and occupation for land will not lie in this
case, and of those cited we notice the following:

In *Nance v. Alexander*, 49 Ind., 516, Alexander owned
a house standing on a lot for which he held a lease. This
house was levied on and sold under an execution and pur-
chased by Nance, who went into possession and occupied
the same for some time. The sale under the execution
having been set aside, Alexander sued Nance for use and
occupation, and the court said: "The finding and judgment
cannot be sustained on the evidence. A suit for use and
occupation can only be sustained where the relation of
landlord and tenant exists expressly or by implication."

In *Mitchell v. Pendleton*, 21 O. St., 664, the facts were: Pendleton owned a lot in the city of Cincinnati extending from Vine to Walnut street. Mitchell & Co. had a lease of a part of this lot and used it for a lumber yard, and had verbal permission to use the other part without paying rent therefor. In November, 1865, Pendleton notified Mitchell that if he continued to use the unleased portion of the lot after a certain date, he would be expected to pay rent. Thereupon Mitchell notified Pendleton that he did not wish to use the unleased portion of the lot any longer, and offered to remove the fence which he had put across it; but Pendleton requested him to let the fence remain, as the lot, if unfenced, might become a nuisance. Shortly after this Mitchell moved all his lumber from that part of the lot not embraced in the lease. Such part of the lot, however, remained unoccupied and vacant, and Mitchell drove his teams across it and threw lumber off his wagons on it, and let the lumber lie there, but made no piles of boards on the land. After the expiration of the lease for that part of the lot occupied for a lumber yard by Mitchell, Pendleton sued Mitchell for the use made by him as above stated, of the portion of the lot not covered by his lease, and the court said: "There was no express contract to pay rent for the land not embraced in the lease; and we think none can be implied from the facts of the case, but rather that such implication is negatived by the conduct of both parties."

In *Stewart v. Fitch*, 31 N. J. Law, 17, the facts were thus stated by the judge delivering the opinion of the court: "The plaintiff is the owner of land in the county of Burlington, bounding on the Delaware river. The defendants, who are lumber merchants, were in the habit of occupying the mud flats adjacent to and in front of plaintiff's lands with their rafts and floats of lumber, and the action in this case was brought for such use and occupation of the flats;" and the court decided: "The action for use and occupation

can only be maintained upon a contract, express or implied. A shore owner cannot maintain an action against a party using lands in front of him between high and low water mark unless he has reclaimed or improved the land so used."

In *Brewer v. Administrators*, 18 N. J. Law, 214, the decision was: "No action can be maintained for use and occupation where the relation of landlord and tenant does not exist; and that relation does not exist where the defendant enters upon land under a contract of purchase and sale or for a deed. If, under such contract, the purchaser enter upon land and cut and sell the timber thereon, the law will not raise an implied contract on which he is liable for goods and timber sold and delivered."

In *Smith v. Stewart*, 6 Johns. [N. Y.], 46*, I quote the opinion of the court in full: "At common law no action of assumpsit for rent would lie except upon an express promise made at the time of the demise. The present action is given by the statute of 11 George 2d, chapter 19, section 14, which we have adopted. But this statute, from the terms of it, seems to apply only to the case of a demise and where there exists the relation of landlord and tenant founded on some agreement creating that relation. * * Here the defendant did not enter under such a relation, but under a contract for a deed. He therefore entered under a color of title which might have been enforced in equity. He finally refused to perform the contract and changed himself into a trespasser, and the better opinion is, notwithstanding the case of *Hearn v. Tomlin*, Peake's N. P., 192, that he never was strictly a tenant and never entitled to notice to quit, nor liable to distress or to an action of assumpsit for rent. He is liable in another way to be turned out as a trespasser, and is responsible in that character for the mesne profits."

In section 19, Taylor's Landlord and Tenant, it is said: "The relation of landlord and tenant may be created by

implication or by express contract.   The law will, in gen-
eral, imply the existence of a tenancy wherever there is an
ownership of land on the one hand and an occupation by
permission on the other, for in such cases it will be pre-
sumed that the occupant intended to pay for the use of the
premises.   It will be implied in many cases where there
has been no distinct agreement between the parties, or
where, from various causes, the agreement may have ceased
to be operative."   In section 655 the same author says:
"Almost any evidence which shows the relation of land-
lord and tenant to exist between the parties, will support
this action (use and occupation).   It is not necessary for
the plaintiff to prove an express contract with the tenant
when he took possession; or any particular reservation of
rent; nor that the tenant has once paid rent; for an under-
standing to that effect will be implied in all cases where a
permissive holding is established."

In *Dwight v. Cutler*, 3 Mich., 566, it was held : "Where
the occupancy of premises by a tenant at will has been
beneficial to him, that is a sufficient ground to imply a
promise to pay a reasonable sum as compensation for such
occupancy, unless there is something in the circumstances
inconsistent with the notion of such a promise or of an
obligation to pay."

In *Hogsett v. Ellis*, 17 Mich., 351, Christiancy, J., speak-
ing for the court, said: "It is very clear that assumpsit
for use and occupation cannot be maintained where the re-
lation of landlord and tenant did not exist during the
occupancy, or when the holding has been adverse to the
owner, because, among other reasons, a disputed title can-
not be tried in an action of assumpsit; but when the rela-
tion exists and the occupancy has been beneficial to the
defendant, we think, upon principle and the weight of
American authority, the law implies a promise to pay a
reasonable compensation, unless there be an express contract
or other circumstance inconsistent with the notion of such

promise, or with the duty or obligation to pay.   *   *   *
And we think the mere fact of the occupancy by A of the
land of B is *prima facie* evidence that A is the tenant of
B, which can only be rebutted by showing some fact or
circumstance tending to rebut this inference.  *  *  *  But
this inference would not tend to establish one kind of ten-
ancy more than another, but simply the relation of landlord
and tenant.   *   *   *   But it has been said that at com-
mon law a tenant at sufferance was not liable for rent; and
this must be so beyond question, as to 'rent,' strictly so
called, which always grows out of express contract and is
fixed and definite in amount.

"The contract being terminated before the tenancy com-
mences, there is nothing from which rent as such can arise;
but the reason generally given for the rule is broad enough
to cover the reasonable compensation for use and occupa-
tion, or, rather, it applies to this as well as to rent."

In *Dalton v. Laudahn*, 30 Mich., 349, the real point
decided in the case was that one could not sue a railroad
company for rent when he had never consented that the
railroad company might use his land and had warned it
that it had no right in the soil and that it went upon the
land at its peril, the court saying that the action for use
and occupation of lands was based on the contract relation
of landlord and tenant and rested upon an express or im-
plied agreement to pay rent during the tenancy.

From the foregoing authorities we deduce the following
principles:

1. To sustain an action for use and occupation of real
estate the relation of landlord and tenant must exist between
the parties, based on an agreement, expressed or implied.

2. One in the exclusive possession of real estate of an-
other with the latter's knowledge, in the absence of all evi-
dence on the subject, will be presumed in possession by the
owner's permission.

3. That the law, in the absence of all evidence to the

contrary, will imply the existence of the relation of land-lord and tenant between two parties where one owns land, and by his permission it is used and occupied by the other.

4. That if the tenant's use and occupation has been beneficial to him, that is sufficient ground from which to imply a promise on his part to pay a reasonable compensation for such use and occupation, in the absence of any evidence negativing such promise.

We are therefore of the opinion that Mrs. Skinner is entitled to recover in this action, from her husband, a fair and reasonable compensation for his use and occupation of her real estate, and that the decree of the court dismissing her petition was error. The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED.