## Mahan-Jellico Coal Co. v. Scalf.

Jan. 18, 1944.

T. E. Mahan and Tye & Siler for appellant.

R. L. Pope, C. B. Upton, John W. Hart and O. W. Black for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This appeal is from a judgment for $1500 in favor of the appellee for an alleged injury received by him while he was working for the appellant. The company is insisting that a directed verdict should have been given in its favor because Scalf failed to show any causal connection between his alleged injury and the condition from which he was suffering, and further, even though he did receive an injury it was not shown that negligence of the company was the proximate cause thereof.

Scalf, who was 42 years of age at the time he re-

ceived his alleged injury, worked at the company's mine as a coal loader. Everett Dotson worked with him. Scalf said that sometime around the last of February, or the first of March, 1942, he was injured while he and Dotson were attempting to get a wrecked car back on the track. He said he was using a steel rail and a mine prop to prize up one end of the car, so that it could be pushed back on the track, and while he had the car in the air Dotson put his foot against the side and when he shoved the car the prop was knocked off the wheel which caused the iron rail to fly up between his legs and strike him in the scrotum. He said also that he became very sick at the time, but later he and Dotson put the car back on the track. He reported for work the next morning and continued to work every day the mine was operating up to and including April 27th. He reported to Dr. Rose on April 29th and around the middle of May Dr. Rose took him to Knoxville where Dr. Barry removed a hydrocele from the cord above his left testicle. Scalf said he began having convulsions after he was injured, principally at night; that he called upon the camp physician and notified him of his injury shortly after the bar struck him; that he was told his condition was not serious; that later Dr. Rose told him he was suffering from a venereal disease; and that Dr. Barry told him, in the presence of Dr. Rose, his condition was caused by the lick from the steel rail.

The company showed by one of its officials that Scalf received $56.16 in February, $70.20 in March, and $81.07 up until the first day of April. Dotson, who testified for the company, said Scalf had been complaining of his stomach for some time before he quit work in April, and he never complained to him of an injury until after he was operated on in Knoxville. He said that occasionally a car would wreck on a straight track laid by him and Scalf, but he never heard of Scalf receiving an injury while getting one of them back on the track, and that at no time did either of them use a steel rail in putting the cars back on the track. He said also that Scalf came to see him during the January term of the Whitley Circuit Court and asked him to come down and swear for him and help him out, and that he told him, "If I come, I will tell what I know about it and the truth about it." He was not permitted to answer this question: "To refresh your recollection, did he say anything in that conversation about his wife?" His avowal was:

"If the witness were permitted to answer, he would say that he said he had to send his wife to the hospital and he had to raise some money." This was not an irrelevant statement and was admissible, because it tended to show why Scalf, the plaintiff, filed his action against the company.

Dr. Rose, the company physician, said he had known Scalf from November, 1930, until September, 1942, and that his physical condition was poor; that Scalf did not report to him until April 29, 1942; that he filled out an insurance claim for him on that date wherein he set April 29th as a beginning date of his sickness or injury, and, in answer to the question, when the accident occurred, he said, "First of February, 1942, was putting on wreck and hit left testicle against rail;" and that Bill Dotson and George Johnson were named as witnesses. A photostat copy of the claim form was filed in evidence. Dr. Rose said Scalf's signature was genuine, to the best of his knowledge, and that he filled in the answers as given to him by Scalf. His diagnosis of Scalf's condition on April 29th was that he was suffering from a growth on the left testicle and he was nervous; that he prescribed rest in bed, and later took the patient to Dr. Barry in Knoxville; that the examination in Knoxville showed Scalf had a hydrocele on the cord a short distance from his left testicle; that he did not believe a blow coming up into the crotch could have struck Scalf at the point where the hydrocele was located; and that, in his opinion and from his knowledge of the medical authorities a hydrocele could not be caused by traumatic injury.

Dr. Barry said he had treated many persons who had a hydrocele, and in no case had one resulted from traumatic injury; that it would have been impossible for a blow to have caused Scalf's, which was somewhat unusual in that the hydrocele was on the cord; that Scalf had no injury when he examined him; that a blow on the testicle would have resulted in epididymitis; and that in his experience and in his studies he had never heard of a hydrocele resulting from a traumatic injury.

The question is, should the case have been submitted to the jury under the evidence heretofore reviewed? The only proof of Scalf's alleged injury was his own and that of relatives. Against this there is the testimony of Dotson, his fellow worker, to the effect that Scalf

was not involved in an accident the latter part of February, or the first of March, and made no mention of an injury to him until after he returned from Knoxville. Then, too, Scalf worked every day the mine was running until the 27th of April. In addition there is medical proof that a hydrocele could not be caused by traumatic injury, and that it would have been virtually impossible for a blow to strike Scalf where the hydrocele appeared in the manner described by him. Clearly the verdict in favor of Scalf could have been arrived at only by speculation and supposition on the part of the jury as to the manner in which the hydrocele developed. The evidence in support of the contention that it resulted from traumatic injury constituted no more than a scintilla, and therefore was insufficient to justify the submission of the case to the jury. The case of Burk Hollow Coal Co. v. McCully's Adm'r, 290 Ky. 435, 161 S. W. (2d) 622, is authority for the conclusions just stated.

Our views are not in conflict with those expressed in the recent case of Consolidation Coal Co. v. Marcum's Adm'r, 289 Ky. 220, 158 S. W. (2d) 150, as a careful examination of that opinion will reveal. One significant difference is that Marcum had worked continuously up until the time he said he became injured by the breathing of bad air, and thereafter he immediately and suddenly became incapacitated and totally disabled to perform any gainful occupation.

It follows that we are of the opinion the judgment should be and it is reversed. If the evidence on a second trial be no stronger in favor of Scalf than on the first, a peremptory instruction should be given in favor of the company.