Marvin E. BRAWNER, Appellant,

v.

Mattie BRAWNER, Respondent.

No. 46319.

Supreme Court of Missouri,
En Banc.

Sept. 14, 1959.

Joseph Langworthy, Pacific, for plaintiff-appellant.

Fred B. Whalen, James R. O'Connor, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondent.

STORCKMAN, Judge.

This is an action by a husband against his wife to recover damages in the sum of $30,000 for personal injuries alleged to have been caused by the negligence of the wife in the operation of her automobile. The trial court dismissed plaintiff's petition holding that the plaintiff husband could not maintain an action against his wife for a personal tort. The plaintiff has appealed.

The parties are and were at the time of the alleged injuries husband and wife, having been married for more than forty-seven years. The negligence charged is that the defendant failed to set the brakes properly when she parked her automobile on a private drive of the premises owned jointly by the parties, thereby permitting the automobile to roll backwards and strike and injure the plaintiff. The question presented is whether a husband can maintain a civil action for damages against his wife for personal injuries resulting from negligent acts committed by the wife during the marriage.

It is recognized by the parties that at common law neither the husband nor the wife could maintain a civil action against the other for a personal tort. Rogers v. Rogers, 265 Mo. 200, 177 S.W. 382, and Willott v. Willott, 333 Mo. 896, 62 S.W.2d 1084, 89 A.L.R. 114, are the leading cases construing the Married Women's Act of 1889 and holding that it did not have the effect of permitting a wife to maintain a civil action against her husband for a personal tort. The first case was an action for false imprisonment and the latter was based on the negligent operation of an automobile. The plaintiff states that it may not be necessary to overrule Rogers and

Willott in order to permit the maintenance of this action because there is stronger authority both statutory and judicial for the husband's right to sue. However, the plaintiff urges that Rogers and Willott should be overruled if necessary to permit the maintenance of the action and that to do otherwise would violate plaintiff's rights under the Constitution of Missouri and the Constitution of the United States.

The statutes upon which the plaintiff mainly relies are Sections 451.250, 451.290, 507.010 and 537.040 RSMo 1949, V.A.M.S. As we view the legal problem presented, it is unnecessary to construe again or discuss at length the effect of the Married Women's Act. The reason is that it was the wife and not the husband that was *under coverture* at common law.

■ Coverture is a term used to describe the condition or state of a married woman whereby the civil existence of the wife was for many purposes merged with that of her husband. Bouv.Law Dict., Rawles Third Revision. In Osborn v. Horine, 19 Ill. 124, 125, the Supreme Court of Illinois described coverture as follows: "The very term *coverture* implies that she is, during its continuance, under the protection of her husband, and the common law will not allow her to do anything which may prejudice her rights or interests, without his advice, consent and approval." The general purpose of the Married Women's Act and related statutes was to relieve the wife from this condition of civil dependency and disability, and to free the husband from liability for his wife's torts.

■ In this case we are not concerned with the right of a married woman to maintain an action but with her liability and legal capacity to be sued by her husband in a negligence action. If public policy does not prohibit such a suit, authority to maintain it is clearly permitted by section 537.040 without resort to the derivative sections of the Married Women's Act to which reference has been made. Section 537.040 provides: "For all civil injuries

committed by a married woman, damages may be recovered against her alone, and her husband shall not be responsible therefor, except in cases where, under the law, he would be jointly responsible with her, if the marriage did not exist." If this section does not create, it at least recognizes the liability of a married woman for her torts; it also absolves the husband of responsibility for the wife's torts based on the marriage relation alone. State ex rel. McCrory v. Bland, 355 Mo. 706, 197 S.W. 2d 669, 168 A.L.R. 929.

In the present state of the law, one spouse is not permitted to maintain this type of action against the other because of the common-law rule of immunity. Section 1.010 RSMo 1949, V.A.M.S. This is true notwithstanding the recent cases of Hamilton v. Fulkerson, Mo., 285 S.W.2d 642, and Ennis v. Truhitte, Mo., 306 S.W.2d 549, in which cases it was held that the rule did not apply because of the special circumstances of those cases. The Married Women's Act has been construed on several occasions as not authorizing actions for personal torts between spouses. It has not been demonstrated that this court is in a better position to interpret the legislative intent of these statutes than the courts that decided the Rogers case in 1915 and the Willott case in 1933. It may well be that this court would reach a different conclusion if it were construing similar statutes enacted in a modern day setting; but we are not at liberty to say that these prior decisions do not correctly interpret the legislative intent of 1889. We next take up the plaintiff's contention that this court should declare that the public policy of the state no longer supports the rule, thereby disapproving and overruling Rogers, Willott, and similar cases.

The plaintiff urges that the judgment of dismissal is contrary to the public policy of the state as expressed in the Motor Vehicle Responsibility Law, Ch. 303, RSMo 1949, V.A.M.S. He contends the fact that the law contains no exclusion for actions between spouses is indicative of a

legislative trend and of a changed public policy. This contention overlooks the nature of the law. Its purpose is to provide greater assurance that liabilities arising out of the ownership, maintenance or use of motor vehicles will be discharged. It does not purport to create any new liability and does not affect the policy here involved.

■ While a precise definition of the term public policy presents difficulty, it is generally said to be that principle of law which holds that no one can lawfully do that which tends to be injurious to the public or against the public good; it is synonymous with the "policy of the law" and "the public good". Dille v. St. Luke's Hospital, 355 Mo. 436, 196 S.W.2d 615, 620(2). The definition and effect of the term is also extensively considered and discussed in In re Rahn's Estate, 316 Mo. 492, 291 S.W. 120, 122, 51 A.L.R. 877, certiorari denied 274 U.S. 745, 47 S.Ct. 591, 71 L.Ed. 1325.

■ Both statutes and judicial decisions have a bearing in ascertaining the public policy of a state, but statutes are the very highest evidence of public policy and binding on the courts. Reed v. Jackson County, 346 Mo. 720, 142 S.W.2d 862, 865(1), certiorari denied Jackson Co. v. Reed, 311 U.S. 716, 61 S.Ct. 397, 85 L.Ed. 466; State on Inf. of Dalton v. Miles Laboratories, Inc., 365 Mo. 350, 282 S.W.2d 564, 574(15); State ex rel. Spink v. Kemp, 365 Mo. 368, 283 S.W.2d 502, 529(40). The general assembly has legislated extensively with regard to marriage, the marital relation, and family rights and responsibilities. It has removed a number of common-law disabilities such as incompetency of a husband or wife to testify in a criminal or a civil case to which the other is a party although the statute in each instance preserves the privilege of their confidential communications. Sections 491.020 and 546.260. While the legislature has been active in the general field of marital relations, it has not seen fit to change the construction of the Married Women's Act made by the Rogers and Willott decisions and the matrimonial immunity declared by those cases and referred to in Rice v. Gray, 225 Mo.App. 890, 34 S.W.2d 567.

Where the general assembly has changed one aspect of a common-law rule, the courts have generally refrained from undertaking any modification of the remainder of the rule. See Cummings v. Illinois Central R. Co., 364 Mo. 868, 269 S.W.2d 111, 121, 47 A.L.R.2d 513, wherein this court stated: "Thus, the legislature has seen fit to change the common law rule in one respect. In our view, if any other changes are to be effected—if dying declarations are to be made admissible in criminal cases other than homicide and abortion (and similar) cases, or in certain types of civil cases or in civil cases generally—such changes should be made by the legislature, the law-enacting branch of government, rather than by the judiciary, the law-interpreting branch." See also State v. Dunbar, 360 Mo. 788, 230 S.W.2d 845, 848–849.

The proper ambit of the court's authority on an issue of this kind is both important and difficult to delineate. Mr. Benjamin N. Cardozo, a judge of the highest appellate court of New York State and later a justice of the Supreme Court of the United States, is recognized as one of the great students and authorities on the development and function of the common law. In his treatise on The Nature of The Judicial Process, Judge Cardozo made these observations concerning the role of the judge as a legislator: "We must not throw to the winds the advantages of consistency and uniformity to do justice in the instance." p. 103. "Each [the judge and the legislator] indeed is legislating within the limits of his competence. No doubt the limits for the judge are narrower. He legislates only between gaps. He fills the open spaces in the law." p. 113. " * * * the power to declare the law carries with it the power, and within limits the duty, to make law when none exists, * * *." p.

124. "Judges have, of course, the power, though not the right, to ignore the mandate of a statute, and render judgment in despite of it. They have the power, though not the right, to travel beyond the walls of the interstices, the bounds set to judicial innovation by precedent and custom. None the less, by that abuse of power, they violate the law." p. 129. " * * * there are jural principles which limit the freedom of the judge, * * *." p. 130. "The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence." p. 141.

Obviously, the general assembly is not only better equipped than this court to investigate and develop the facts pertinent to a determination of this phase of public policy but also has greater authority to deal with the particular problem and at the same time the related ones. The problem with which we are concerned is not an isolated one. It touches on many subjects with which the legislature has dealt, such as the privileged communications of married persons, a husband's liability for his wife's support which includes medical expenses, and children's rights of inheritance from their parents. Also, the insurance business is affected with a public interest, is subject to the control of the state's police power and has been extensively regulated. State on Inf. of McKittrick v. Koon, 356 Mo. 284, 201 S.W.2d 446; Barker v. Leggett, Mo., 295 S.W.2d 836.

Assuming, however, that this court is free to declare the public policy and change the rule in this kind of case, the persuasive effect of the action of other jurisdictions and related decisions of this state should be considered. Without undertaking to discuss in detail the holdings in other states, they may be summarized by means of the annotation in 43 A.L.R.2d 632, published in 1955. It appears that twenty-nine states, including Missouri, adhere to the common-law rule of marital immunity. In addition, such actions are not permitted in the District of Columbia, Canada or England. On the other hand, the annotation lists twelve states as following the minority rule, permitting either spouse to sue the other for a personal tort. In two other states, Arizona and Ohio, the decisions are rather inconclusive but they appear to follow the minority rule. It appears that two other states, North Carolina and Wisconsin, have by statute authorized the maintenance of a personal injury action by one spouse against the other.

In 1953 the Illinois legislature amended its statute to provide that "neither husband nor wife may sue the other for a tort to the person committed during coverture." Laws of Illinois, 1953, p. 437, § 1; Smith-Hurd Illinois Statutes, Ch. 68, § 1. In 1937 when § 57 of New York's Domestic Relation Law was changed to permit a suit by a husband or wife against the other for personal injuries, a companion statute was enacted which provides: "No policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse or because of injury to, or destruction of property of his or her spouse unless express provision relating specifically thereto is included in the policy." Consolidated Laws of New York, Insurance Law, § 167, subd. 3.

Legal writers have generally favored some change in the common-law rule, although they are not in complete agreement as to the extent and nature of the modification. Professor William E. McCurdy in his treatise on Torts Between Persons In Domestic Relation, 43 Harvard Law Review, 1030, 1050, discusses the considerations influencing the courts for recognition or denial of the right of spouses to sue each other for personal torts and suggests five possible solutions ranging from permitting no civil action to permitting all actions between spouses as though they were strangers sole and unmarried. He prefers a plan imposing a number of sub-

stantive limitations upon such actions because of the relation of the parties. In discussing the possible disruption of home life and danger of domestic collusion, Professor McCurdy stated (p. 1053): "In all these things we are in the realm of vague public policy, dangerous for courts to invade, equipped as they are with only the weapon of *a priori* reasoning." Among the textwriters on the subject are Prosser on Torts, § 101, pp. 670, 673, and I Harper and James, The Law of Torts, § 8.10, p. 643. It is argued by some that liability insurance coverage in such cases is an effective insulation against a defendant spouse being unhappy about being sued; while others say that insurance coverage would tend to induce collusive claims since both spouses would stand to benefit by the recovery which would be morally offensive. Some think that accident insurance coverage would be preferable to liability insurance. While the protection is limited to pecuniary losses, it covers all accidental injuries including those resulting from automobile accidents, is not dependent upon human fault and does not put the married couple in an adversary position as a prerequisite for recovery.

Just recently this court recognized the continued existence of the rule that an unemancipated minor cannot sue a parent to recover damages for personal injuries alleged to have been caused by the negligent operation of an automobile. Wurth v. Wurth, Mo., 322 S.W.2d 745. This immunity from suit is based upon the same sort of public policy considerations as in the case at bar. Baker v. Baker, 364 Mo. 453, 263 S.W.2d 29. Also in the Baker case, as in the case at bar, the liability of the defendant was insured. This court has also adhered to the rule of immunity of charitable institutions for tort liability, Kreuger v. Schmiechen, 364 Mo. 568, 264 S.W.2d 311; Dille v. St. Luke's Hospital, 355 Mo. 436, 196 S.W.2d 615, and of municipalities while operating a hospital as a governmental function, Schroeder v. City of St. Louis, 360 Mo. 293, 228 S.W.2d 677.

■ The common-law rule of spousal immunity from suit for a personal tort has been in existence during the entire period of Missouri statehood. It affects more than private rights, 26 Am.Jur. 633, Husband and Wife § 4, and should not be lightly disturbed. The appellant urges that the rule is so "out of step with modern conditions" that it should be abrogated by the court. We refrain from doing so. If the public interest requires a change, we believe, for the reasons stated, that it should be made by the general assembly. On the present record it has not been demonstrated that the court should act.

■ In his Divisional Reply and Supplemental Brief, the plaintiff presented for the first time his contention that the common-law rule of marital immunity violates § 14, Art. I, Constitution of Missouri 1945, V.A.M.S., in that a "certain remedy" is not afforded for the injury sued on. This constitutional question was not presented to the trial court nor was it preserved in plaintiff's motion for new trial as required by section 512.160(1) and S.Ct. Rule 3.23, 42 V.A.M.S. The plaintiff, however, seeks to have the contention decided by invoking S.Ct. Rule 3.27. Certainly this is not a *plain* error in the sense that it is manifest and clear. See Elkins-Swyers Office Equipment Co. v. Moniteau Co., 357 Mo. 448, 209 S.W.2d 127, 130(2); Quinn v. Buchanan, Mo., 298 S.W.2d 413, 417(5), and 11 Am. Jur. 1124–1126, Constitutional Law § 326. It is not within the purview of the rule designed to prevent the occurrence of a manifest injustice. Critcher v. Rudy Fick, Inc., Mo., 315 S.W.2d 421; Johnson v. Fotie, Mo., 308 S.W.2d 662; In re Petersen's Estate, Mo., 295 S.W.2d 144. This will further appear from the consideration of other constitutional questions properly raised.

The plaintiff also asserts that the judgment of dismissal was in violation of § 10, Art. I, Constitution of Missouri, and § 1 of Amendment 14 of the Constitution of the United States, in that he was denied the

right to enforce his chose in action thereby depriving him of his property without due process of law. The essence of plaintiff's contention is that the due process limitation prevents the state from imposing any restriction based on marital status upon litigation between spouses. This would necessarily mean that statutory as well as common-law restrictions are prohibited. The defendant says there can be no constitutional questions because the common-law rule of immunity existed prior to the adoption of the constitutional provisions. We believe, however, the issues should be decided on broader grounds.

In the reasonable exercise of its police power, a state may regulate the effect of marriage upon the property rights of the parties as well as the qualification of the contracting parties, the formalities necessary for its creation, the duties and obligations incident to the marriage relation, and the grounds for its dissolution. 55 C.J.S. Marriage § 2, p. 809; 35 Am.Jur. 187, Marriage § 12.

Matrimonial status is still a matter of public concern; the state has a direct interest and is in effect a third party to every marriage contract. Parks v. Marshall, 322 Mo. 218, 14 S.W.2d 590, 595(7), 62 A.L.R. 835; Wagoner v. Wagoner, 287 Mo. 567, 229 S.W. 1064, 1070(5).

The constitutional guaranties that no person shall be deprived of life, liberty, or property without due process of law, and that no state shall deny to any person within its jurisdiction the equal protection of the laws, were not intended to limit the subjects upon which the police power of a state may lawfully be exerted. Bellerive Investment Co. v. Kansas City, 321 Mo. 969, 13 S.W.2d 628, 634(1); Valley Spring Hog Ranch Co. v. Plagmann, 282 Mo. 1, 220 S.W. 1, 5(10), 15 A.L.R. 266.

A regulation that is fairly referable to the police power of the state in that it is designed to protect the health, safety, peace, comfort and general welfare, does not infringe upon constitutional guaranties of personal rights and due process unless the regulation passes the bounds of reason and assumes the character of arbitrary power. Bellerive Investment Co. v. Kansas City, supra, 13 S.W.2d 634(2).

The plaintiff also asserts that the dismissal of his petition was in violation of § 2, Art. I, Constitution of Missouri, and § 1 of Amendment 14 of the Constitution of the United States in that he was denied the right to enforce his chose in action "because of the coverture of the parties" thereby depriving him of equal rights and opportunity under the law and equal protection of the laws. The plaintiff does not demonstrate any unconstitutional inequality and we have discovered none.

The equal protection clauses of the state and federal constitutions do not prohibit classification of the subjects of legislation and the constitutional provisions are sufficiently complied with if all within the same class are included and treated alike. Hammett v. Kansas City, 351 Mo. 192, 173 S.W.2d 70, 72(1); Ballentine v. Nester, 350 Mo. 58, 164 S.W.2d 378, 383 (17).

Many statutory and common-law obligations and privileges not equally distributed between husband and wife, such as the obligation of family support imposed on the husband, are undoubtedly valid. The wisdom and policy of the statute abolishing curtesy which created an inequality between husbands and wives and discriminated against the husband's rights was held to be a matter for legislative determination that could not be considered by the courts. O'Brien v. Sedalia Trust Co., 319 Mo. 1001, 5 S.W.2d 74, 76–77. The claims of unconstitutionality are denied.

The trial court's ruling was not erroneous and accordingly the judgment is affirmed.

All concur except HOLLINGSWORTH, C. J., who dissents in separate opinion filed.

HOLLINGSWORTH, Chief Justice (dissenting).

I must respectfully dissent from the opinion adopted in this case by the Court En Banc. My reasons for so doing are well stated in an opinion submitted in Division Two by Stockard, C., which, omitting the first and last paragraphs thereof, I, with his consent, adopt as my dissenting opinion. It follows:

It is undisputed that at common law neither spouse could maintain an action against the other for a tort committed during coverture. Rogers v. Rogers, 265 Mo. 200, 177 S.W. 382, 383; Willott v. Willott, 333 Mo. 896, 62 S.W.2d 1084, 89 A.L.R. 114; 41 C.J.S. Husband and Wife § 396; Harper & James, Torts, § 8.10. Therefore, if the plaintiff in this case is entitled to maintain this action against his wife, it must be because the common-law rule has been appropriately changed by statute, or if not changed by statute, then because it should be or has been changed by this court in the exercise of its inherent power to modify ancient and outmoded rules of the common law by reason of changed social conditions. See State v. Kollenborn, Mo.Sup., 304 S.W.2d 855.

The common-law rule that neither spouse could sue the other was based primarily upon the historical legal fiction of unity of husband and wife with the resulting conclusion that a person could not sue himself, but the courts, particularly subsequent to the adoption of what is known as the married women's acts, have frequently based the disability of one spouse to sue the other on a public policy to preserve or promote marital harmony and domestic peace and felicity. 41 C.J.S. Husband and Wife § 396; Patenaude v. Patenaude, 195 Minn. 523, 263 N.W. 546; Corren v. Corren, Fla., 47 So.2d 774; Annotation, 43 A.L.R.2d 632, 661–662. The universal adoption by the various states of the married women's acts relieved wives from many of the common-law disabilities, and it was readily recognized that the Missouri act had the effect of emancipating a married woman by "endowing her with ability to sue and be sued, to manage her own property, [and] to have the earnings of her labor." Claxton v. Pool, Mo.Sup., 197 S.W. 349, 352, L.R.A. 1918A, 512. While the courts of the various states are fairly uniform in the interpretation of these acts insofar as they pertain to property interests of a married woman, there is a wide divergence of opinion, even when the language of the statutes is substantially the same, as to whether they authorize a married woman to sue her husband or to be sued by him for what is referred to as a personal tort.

The terminology of the married women's acts varies widely between the states. Some expressly prohibit actions for personal torts between husband and wife. See Chap. 68, § 1, Ill.Ann.Stat. Others provide that no action between spouses for personal tort is thereby authorized. See § 37:2–5, New Jer.Stat.Ann. The largest classification of married women's acts simply confers upon a married woman the right to sue and be sued as a feme sole. See 4 Fordham L.Rev. 475, and the classification there made of the various married women's acts, and see also the cases collected and annotated at 43 A.L.R.2d 632. Within this group there is a wide variance between the states in interpreting the effect of this provision. For example, the statutory provision that "A woman may while married sue and be sued in the same manner as if she were unmarried" was held to authorize a suit by the wife against the husband for the use and occupation of her separate real estate, Skinner v. Skinner, 38 Neb. 756, 765, 57 N.W. 534, but not to authorize a suit for personal injuries. Emerson v. Western Seed & Irrigation Co., 116 Neb. 180, 216 N.W. 297, 56 A.L.R. 327. On the other hand, the statutory provision that a married woman "may * * * sue and be sued, in all matters in law and equity, and upon any contract by her made, or for any wrong by her done, as if she were unmarried," authorized her to sue her husband for personal tort. Gilman v. Gil-

man, 78 N.H. 4, 95 A. 657, L.R.A.1916B, 907. We shall not attempt the unrewarding task of attempting to reconcile the cases in the various jurisdictions, but we shall subsequently mention a few cases from other jurisdictions where married women's acts similar to those in this state have been construed in reference to the right of one spouse to sue the other for a personal tort.

The provision of the Missouri married women's act with which we are primarily concerned, now designated as section 451.-290 (all statutory references are to RSMo 1949, V.A.M.S., unless otherwise stated), was originally enacted in 1889, and it has remained unchanged except for a minor amendment in 1939 which is not material to the issues presented in this case. This section provides: "A married woman shall be deemed a *femme sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her, and may sue and be sued at law or in equity, with or without her husband being joined as a party; * * *."

This statute is in derogation of the common law, and it unquestionably creates in married women new rights and it removes certain common-law disabilities. We note that although it provides that a married woman may sue and be sued at law or in equity, it does not specifically provide that a wife may sue her husband or that a husband may sue his wife. On the other hand, it does not make any specific exception to the general and all inclusive language as to suits between husband and wife. Prior to the enactment of section 451.290 it was held that in some situations a wife could sue her husband in equity. Rieper v. Rieper, 79 Mo. 352. After its enactment it has been held that by reason of this statute a husband may sue his wife in equity, Abramsky v. Abramsky, 261 Mo. 117, 168 S.W. 1178; that either spouse may sue the other in replevin or conversion or for the willful

or malicious destruction of the separate property of the plaintiff spouse, Shewalter v. Wood, Mo.App., 183 S.W. 1127; that either spouse may sue the other on contract, Rudd v. Rudd, 318 Mo. 935, 2 S.W.2d 585; Cole v. Cole, 231 Mo. 236, 132 S.W. 734; Rice, Stix & Co. v. Sally, 176 Mo. 107, 75 S.W. 398; Regal Realty & Investment Co. v. Gallagher, Mo.Sup., 188 S.W. 151; Hall v. Greenwell, 231 Mo.App. 1093, 85 S.W.2d 150; Montgomery v. Montgomery, 142 Mo.App. 481, 127 S.W. 118; that a wife may sue her husband in equity to recover her property, Hudson v. Wright, 204 Mo. 412, 103 S.W. 8; and that a wife may sue her husband for conversion of her property, Smith v. Smith, Mo.App., 300 S.W.2d 275. It is apparent that the absence in this statute of specific authority for one spouse to sue the other has not deterred the courts from holding that in cases in equity, and in those involving property rights, even though the suit was one sounding in tort, the statute furnished the necessary authority to abrogate the common-law rule that such suits other than those in equity between spouses could not be maintained.

In 1915 there was first presented to this court the question of whether by reason of the married women's act one spouse could sue the other for a personal tort. In Rogers v. Rogers, 265 Mo. 200, 177 S.W. 382, 384, a married woman sought but was denied the right to maintain a suit for damages against her husband for an alleged false imprisonment. The court stated that what is now section 451.290 "definitely declares the purposes for, and the extent to which * * * [a married woman] shall be deemed a feme sole," but it does not contain authority for a married woman to sue her husband for a personal tort. It was further stated that "it has never been held that he [the husband] may sue his wife for a personal tort" and what is now section 451.290, and another statute now repealed, did "not attempt to confer greater rights of action upon a married woman than are possessed by her husband."

Considerable reliance was placed on Peters v. Peters, 156 Cal. 32, 103 Pa. 219, 23 L.R.A.,N.S., 699, wherein it was held that a husband could not maintain an action against his wife for deliberately wounding him. An examination of the Peters case discloses that the California statute relied on did not go any farther than as stated in the Rogers case, that is, "giving her the right to separate property and permitting her to contract with him," and that there was no provision, comparable to that in section 451.290, that a married woman could sue or be sued at law or in equity as a feme sole. In the Rogers case it was concluded that although the married women's act of this state was "comprehensive * * * in effecting * * * [a married woman's] emancipation from matrimonial bonds so far as her property rights and the right to contract with others and her husband is concerned, and to sue and be sued by him at law (Rice, Stix Co. v. Sally, 176 Mo. loc. cit. 128, 75 S.W. 398, and cases), and to sue alone in tort for injuries sustained by her through the negligence of others (Elliott v. Kansas City, 210 Mo. 576, 109 S.W. 627), there is no authority express or implied in the act given her to sue him for a personal tort." This ruling appears at first reading to be based strictly on an interpretation of the language of the statute, but as pointed out in Hamilton v. Fulkerson, Mo. Sup., 285 S.W.2d 642, 644, "the reasons prompting the statutory construction there made rather than the possible and plausible contrary construction, were considerations of 'public policy.'" Whatever was the underlying basis for the result there reached, this construction of the Missouri married women's act has been consistently followed. See Rice v. Gray, 225 Mo.App. 890, 34 S.W. 2d 567; Willott v. Willott, 333 Mo. 896, 62 S.W.2d 1084, 89 A.L.R. 114; Rosenblum v. Rosenblum, 231 Mo.App. 276, 96 S.W.2d 1082; Mullally v. Langenberg Bros. Grain Co., 339 Mo. 582, 98 S.W.2d 645; Planck v. Planck, Mo.Sup., 199 S.W. 1183. We need not discuss these cases individually because they all purported to follow Rogers v. Rogers as being decisive of the question of whether one spouse was entitled to sue the other spouse for a personal tort committed during coverture.

It may be contended that Rogers v. Rogers does not pertain to the precise point here because there a wife sought to sue her husband for a personal tort instead of the other way around. We see no justifiable reason to attempt to distinguish the cases on that basis. The authority contained in section 451.290 is not only to sue but to be sued at law or in equity as a feme sole. The problem we have here pertains to the right of one spouse to sue the other for personal tort committed during coverture whether the plaintiff-spouse be husband or wife. In determining this question consideration must be given not only to Rogers v. Rogers but also to two recent opinions of this court, which we shall now discuss.

In Hamilton v. Fulkerson, supra, the wife sought and was permitted to sue her husband for an antenuptial tort based on negligence in the operation of an automobile. The decision turned principally upon the interpretation of section 451.250 which, in its pertinent parts, is as follows: "All real estate and any personal property, including rights in action, belonging to any woman at her marriage or which may have come to her during coverture, by gift, bequest or inheritance, or by purchase with her separate money or means, or be due as the wages of her separate labor, or has grown out of any violation of her personal rights, shall * * * be and remain her separate property and under her sole control, * * *." In the Hamilton case [285 S.W.2d 645] it was held that the language of this statute "seems broad and plain," and that "even if the common-law rule that marriage extinguished all rights of action and claims by one spouse against another, * * * should be, in the absence of specific statutory provision to the contrary, recognized and applied today in Missouri, Section 451.250 furnishes the necessary specific statutory authority for the abrogation of that rule as it might otherwise apply to

the facts of * * * [that] case." No discussion was made, nor was it appropriate to do so under the facts, of the provisions in section 451.250 pertaining to a right of action by the wife "which may have come to her during coverture" and which "has grown out of any violation of her personal rights." But the interpretation and application of section 451.250 which led to the result in Hamilton v. Fulkerson apparently would apply with equal force and effect to the factual situation where a wife sought to sue her husband on a cause of action for a personal tort which came "to her during coverture" and which arose "out of any violation of her personal rights." As we subsequently shall see this court held in Ennis v. Truhitte, Mo.Sup., 306 S.W.2d 549, that when a husband commits a personal tort against his wife a right of action does come into existence which can survive his death, and this necessarily presupposes a violation of her personal rights. Specific consideration was given in the Hamilton case to the question of public policy, and its effect on the right of the wife to maintain the suit against her husband, but it was held that "there are no matters of public policy" [285 S.W.2d 647] which would prohibit the maintenance of the suit under the specific facts of that case. Therefore, even if it was not intended by what is now section 451.290, as stated in Rogers v. Rogers, [265 Mo. 200, 177 S.W. 384] "to confer greater rights of action upon a married woman than are possessed by her husband," the Hamilton case holds that the Legislature did confer on the wife the right to sue her husband for an antenuptial personal tort whether the husband has the corresponding right or not. In addition, the inescapable result of the Hamilton case, by reason of its interpretation of section 451.250, necessarily must be that a wife may sue her husband for a personal tort which came "to her during coverture" and which arose "out of any violation of her personal rights," and that no public policy would prohibit the action because, as stated in the Hamilton case,

this court by its decision in Mullally v. Langenberg Bros. Grain Co., 339 Mo. 582, 98 S.W.2d 645, "recognized that there were were no considerations of public policy weighty enough to prohibit a wife's suit against her husband for a personal tort * * * committed during marriage." [285 S.W.2d 647.]

In the Hamilton case it was pointed out that in Rogers v. Rogers no mention was made of or consideration given to what is now section 451.250, although it was then in effect as § 8309, RSMo 1909. We also note that in Willott v. Willott, supra, a case wherein a wife sought to sue her husband for injuries resulting from his negligent operation of an automobile, what was then § 3003, RSMo 1929, and is now section 451.250 deserved only the comment that "it so obviously relates alone to the separate property rights of a married woman that we do not set it out or intend to give it further notice * * *." [333 Mo. 896, 62 S.W.2d 1084.] This comment is directly in conflict with the interpretation of this statute in Hamilton v. Fulkerson.

In Ennis v. Truhitte, supra, a woman was permitted to maintain an action against the estate of her deceased husband for a personal tort occurring during coverture. The opinion does not expressly state whether reliance was placed on section 451.250 or section 451.290, but it was stated that the married women's act, of which both sections are considered to be a part, does not either expressly deny or grant to a wife the right to sue her husband for a personal tort, but that "the terminology of the statutes is broad enough to permissively cover the matter." [306 S.W.2d 551.] The important feature of this case in its application to the matter now before us is that the court expressly held that a personal tort by one spouse against the other during coverture does give rise to a cause of action. After commenting on the fact that it is sometimes stated " 'that one spouse has no right of action against the other to recover damages for personal injuries caused by the other,' " it was stated that "it belies

reality and fact to say that there is no tort when the husband either intentionally or negligently injures his wife." Of course, it would equally belie reality and fact to say that there is no tort when the wife either intentionally or negligently injures her husband. It was held in the Ennis case that "If there was a tort, even though one spouse could not maintain an action against the other for the wrong, the cause of action, as of course, accrued at the time of injury or when the damage 'is capable of ascertainment' * * * and so, * * * there was 'a cause of action in being to survive.'" It was concluded that the circumstances in the Ennis case did not "infringe any reasons of policy," and because the married women's act does not "preclude the action" the suit could be maintained.

It necessarily follows that the holding of Rogers v. Rogers [265 Mo. 200, 177 S.W. 2d 384] that "an action for a personal tort committed by a husband against a wife during coverture cannot be maintained under our statutes" was disapproved by the Ennis case insofar as it would preclude the maintenance of such an action against the estate of a deceased husband. Also, it is inescapable that the language in Rogers v. Rogers to the effect that in no event could a husband sue his wife for a personal tort is disapproved insofar as it could be construed to prevent a suit by a husband against the estate of his deceased wife for a personal tort committed during coverture.

We may briefly summarize the present situation as follows: Section 451.290 does not expressly state that one spouse may or may not sue the other for any purpose, but the courts have consistently held that this statute supplies the necessary statutory authority to abrogate the common-law rule which prohibited suits between spouses, and that it authorizes a suit by one spouse against the other in equity, and at law on contracts, and for the protection of property even though the action is one sounding in tort; Ennis v. Truhitte [306 S.W.2d 551] holds that when one spouse negligent-ly or intentionally injures the other a cause of action for that personal tort does come into existence, and that section 451.290 is "broad enough to permissively cover the matter" and it does not preclude the maintenance of a suit by one spouse against the other for a personal tort; the reasons prompting the construction of what is section 451.290 in Rogers v. Rogers were that "the courts should construe the women's emancipation statutes in such a way as would avoid the possibility of disturbing domestic tranquility" (See Hamilton v. Fulkerson, supra, 285 S.W.2d at page 644); and Hamilton v. Fulkerson unquestionably purports to dispose of the "public policy question" by its assertion that this court, in Mullally v. Langenberg Bros. Grain Co., supra, "recognized that there were no considerations of public policy weighty enough to prohibit a wife's suit against her husband for a personal tort * * * committed during marriage." Of course, if public policy does not prohibit a wife's suit for personal tort against her husband, it does not prohibit such a suit by the husband against the wife. We must necessarily conclude that in view of the inescapable implications arising from what was said and done in Hamilton v. Fulkerson and Ennis v. Truhitte, this court has in effect already disapproved the result in Rogers v. Rogers. Therefore, the question we have is whether we should now directly disapprove it, or retract from the inescapable implications of these recent cases. This depends upon whether we agree that section 451.290 permits a suit for personal tort by one spouse against the other, and if so, whether there are any impelling reasons, notwithstanding such authorization, that public policy requires this court to deny the right of plaintiff in this case to sue his wife for a personal tort.

As to statutory construction: The language of section 451.290 is that a married woman shall be deemed a feme sole so far as to enable her to sue and be sued at law or in equity. This statute seems "to be as broad as plain words can make it."

See Brown v. Gosser, Ky., 262 S.W.2d 480, 483, 43 A.L.R.2d 626. The plaintiff in this case unquestionably would be entitled to maintain suit on his cause of action against the defendant if she were unmarried, that is, if she were a feme sole, and the Legislature has unequivocally said that the defendant, as a married woman, may be sued as a feme sole. The broad and all inclusive language of the statute is not limited in any respect, and it does not directly or by inference provide that she may be sued by everyone except her husband. In Gilman v. Gilman, 78 N.H. 4, 95 A. 657, L.R.A. 1916B, 907, the court construed a statute that a married woman may "sue and be sued, in all matters in law and equity * * * as if she were unmarried," and it was there held: "If this language is given its ordinary meaning, she [wife] can maintain this action, providing she could maintain it if she were a single woman; for the statute provides in terms that, * * * she may sue and be sued in all matters as though she were unmarried. * * * Therefore the test to determine whether the plaintiff can maintain this action is to inquire whether she could maintain it if she were unmarried, and not to inquire who the defendant is, nor whether she is seeking to enforce a property right." This interpretation and reasoning applies equally as well when it is the husband who is the plaintiff as when it is the wife. There is nothing in section 451.290 to indicate that in determining whether a married woman may be sued the courts should inquire who the plaintiff is.

We also see nothing in the statute to indicate that the courts should inquire concerning the nature of the cause of action, that is, whether it is a suit on a contract, for a property tort, or for a personal tort. In Brandt v. Keller, 413 Ill. 503, 109 N.E.2d 729, 734, the court construed the provision of the Illinois married women's act (prior to its amendment which expressly prohibited suits between spouses for personal torts committed during coverture, see Chap. 68, § 1, Ill.Ann.Stat.), which provided in substance that a married woman could, in all cases sue and be sued without joining her husband, to the same extent as if she were unmarried. It was there held: "The statute cannot be construed to abrogate a husband's common-law immunity from suit by his wife for contract purposes, and be construed to perpetuate his immunity for another purpose." By reason of the broad and unrestricted language used by the Legislature in section 451.290 it is inconsistent and entirely without support in the language used to say it was intended that a married woman may sue her husband and be sued by him on a contract and for a property tort but not for a personal tort. We must and do reaffirm the holding of Ennis v. Truhitte that the married women's act does authorize or permit the maintenance of a suit for personal tort by one spouse against the other.

As to public policy: We previously noted that the construction in Rogers v. Rogers of what is now § 451.290 was based primarily upon considerations of public policy. The language of section 451.290 is comparable to that in the Kentucky statute, KRS 404.020, which authorized a married woman "to sue and be sued as a single woman," and in Brown v. Gosser, supra, in commenting on that statutory provision and the public policy question, it was stated that "we still are faced with the elementary and, we think, unanswerable proposition that the Legislature has spoken on this subject. It has enunciated the public policy on this subject * * * by saying a married woman may sue and be sued as a single woman. It is not the function of the courts to enunciate a contrary policy." [262 S.W.2d 484.] We cannot escape the conclusion, notwithstanding the result reached in Rogers v. Rogers, that our Legislature has also announced, without any limitation as to who may be plaintiff or defendant or as to the type of action or its purpose, that the public policy in this state is that a married woman may sue and be sued, and that it is not our function to enunciate a contrary policy even though we may not agree that the announced policy is the best. We agree with the statement of

Justice Harlan in the dissenting opinion in Thompson v. Thompson, 218 U.S. 611, 31 S.Ct. 111, 113, 114, 54 L.Ed. 1180, 30 L.R.A.,N.S., 1153, 21 Ann.Cas. 921, that "it is not within the functions of the court to ward off the dangers feared or the evils threatened simply by a judicial construction that will defeat the plainly-expressed will of the legislative department."

Assuming, however, that it may be contended that the authority contained in section 451.290 for one spouse to sue the other for any purpose, including a personal tort, is permissive only, and for that reason this court may declare that such suits as the one here presented should not be permitted as a matter of public policy, this court in Hamilton v. Fulkerson, has, in effect, already stated that there are no considerations of public policy weighty enough to prohibit a suit by one spouse against the other for a personal tort committed during marriage.

The reasons most frequently advanced in support of the argument that public policy should constitute a bar to suits by one spouse against the other for personal tort are that such suits would disturb or destroy marital harmony and domestic accord; cause fraudulent and collusive claims; encourage litigation; and promote trivial lawsuits. It is also frequently asserted that the right of one spouse to sue the other for personal tort is not needed because the divorce and criminal laws afford an adequate remedy. For a complete discussion of this "public policy argument" see Leach v. Leach, 227 Ark. 599, 300 S.W.2d 15; Brandt v. Keller, supra; Brown v. Gosser, supra; Thompson v. Thompson, supra; Harper & James, Torts, § 8.10; Prosser on Torts, 2d ed., § 101; 43 Har.L.Rev. 1030, 1052; 10 Calif.L.Rev. 461, 471–480; 10 Ind.L.J. 290; 23 Mo.L.Rev. 103; and the cases collected and annotated in 43 A.L.R. 2d 632, 661–664.

This court in Hamilton v. Fulkerson discussed in considerable detail the various "public policy" arguments against the maintenance of a suit by one spouse against the other for an antenuptial tort. The same arguments pro and con apply equally to the maintenance of a suit by one spouse against the other for a tort committed during coverture, and without burdening this opinion with a repetition of that discussion we find no impelling reasons why the conclusion of the Hamilton case on this question should now be disapproved. We are inclined to agree with the statement in Mertz v. Mertz, 271 N.Y. 466, 3 N.E.2d 597, 601, 108 A.L.R. 1120, made in reference to the rule that public policy should prohibit a suit between spouses for a personal tort, that "the rule exists merely as a product of judicial interpretation, is vestigial in character, and embodies no tenable policy of morals or of social welfare. To urge that it survives because it is an aid to conjugal peace disregards reality. Conjugal peace would be as seriously jarred by an action for breach of contract, or on a promissory note, or for an injury to property, * * * all of which the law permits, as by one for personal injury."

There is no challenge to the petition other than that the parties are husband and wife. For the reasons above set forth, I am conviced that Rogers v. Rogers and the cases which have followed the result there reached should be overruled, and that the judgment dismissing the petition in this case should be reversed and the cause remanded for further proceedings.